# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL ACTION NO. 1:20-CV-091-DCK

| | |
|---|---|
| TINA LAIL, | ) |
| | ) |
|       Plaintiff, | ) |
| | )   **ORDER** |
|   v. | ) |
| | ) |
| ANDREW SAUL, | ) |
|   Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 20) and "Defendant's Motion For Summary Judgment" (Document No. 22). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, applicable authority, and testimony from the hearing, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

As discussed herein, this is an especially close case, particularly as to Plaintiff's first issue. The Court notes, respectfully, that while it believes this decision adverse to Plaintiff is consistent with the law applicable to review of these social security disability cases, it would observe that a renewed application by this Plaintiff – alleging a new disability onset date – might yield a different result.

## I. BACKGROUND

Plaintiff Tina Lail ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about July 29, 2016, Plaintiff filed an application for a period of disability and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning February 1, 2016. (Transcript of the Record of Proceedings ("Tr.") 12). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on October 6, 2016, and again after reconsideration on February 14, 2017. (Tr. 12, 90, 94). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties.
> We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 94).

Plaintiff filed a timely written request for a hearing on March 9, 2017. (Tr. 12, 110). On October 17, 2018, Plaintiff appeared and testified at a hearing before Administrative Law Judge Thaddeus J. Hess (the "ALJ"). (Tr. 12-24, 32-66). In addition, Kathleen Robbins, a vocational expert ("VE"), and Leah Broker, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on January 23, 2019, denying Plaintiff's claim. (Tr. 12-24). On March 20, 2019, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on February 19, 2020. (Tr. 163-64, 1-6). The ALJ decision

2

Case 1:20-cv-00091-DCK   Document 25   Filed 09/14/21   Page 2 of 18

became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on April 17, 2020. (Document No. 1). On December 18, 2020, the parties consented to Magistrate Judge jurisdiction, and the case was reassigned to the undersigned as presiding judge. (Document No. 19).

Plaintiff's "Motion For Summary Judgment" (Document No. 20) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 21) were filed December 31, 2020; and "Defendant's Motion For Summary Judgment" (Document No. 22) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 23) were filed January 12, 2021. "Plaintiff's Response To Defendant's Memorandum In Support Of Motion For Summary Judgment" (Document No. 24) was filed January 26, 2021.

Based on the foregoing, the pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.

3

2012).  "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence.  Hays, 907 F.2d at 1456;  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations.");  Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between July 29, 2016, and the date of his decision.[1]  (Tr. 12, 24).  To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 23-24).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since July 29, 2016, the date of her application for SSI. (Tr. 14). At the second step, the ALJ found that degenerative disc disease of the cervical and lumbar spine, lumbar radiculopathy, carpal tunnel syndrome, history of hepatitis C, obesity, depressive disorder, and panic disorder were

severe impairments.[2] (Tr. 14-15). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15-17).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform work as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) (lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 out of 8 hours; sit 6 out of 8 hours) except that she can never climb ladders, ropes or scaffolds; the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs the claimant must avoid concentrated exposure to workplace hazards, such as unprotected heights and moving machinery; the claimant is limited to low stress work (with occasional decision-making and occasional changes in the work setting); and the claimant can only have occasional interaction with the general public.

(Tr. 17). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff had no past relevant work. (Tr. 23). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. Id. Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

included a building cleaner, a marker in retail, and café attendant.  (Tr. 24).  Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between July 29, 2016, and the date of his decision, January 23, 2019.  Id.

Plaintiff on appeal to this Court makes the following assignments of error:  (1) the ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to stand and walk when formulating the RFC;  (2) the ALJ erred by failing to incorporate an admitted limitation to simple routine tasks into the RFC;  and (3) the ALJ erred by failing to include manipulative limitations from Plaintiff's severe impairment of carpal tunnel syndrome in the RFC.  (Document No. 21, p. 4).  The undersigned will discuss each of these contentions in turn.

**A.**     **Ability to Stand and Walk**

In the first assignment of error, Plaintiff argues that the ALJ failed "to perform a proper function-by-function evaluation of Plaintiff's ability to stand and walk when formulating the RFC."  Id. at 4.  Plaintiff testified that "she can only stand about 5-to-8 minutes before needing to rest and that she can only walk about 10 minutes at a time."  Id.  (citing Tr. 45-47).  Nevertheless, Plaintiff observes that "the ALJ essentially found that, with regards to standing and walking, Ms. Lail could perform a full range of light work, which includes standing and walking up to six hours out of an eight-hour workday."  (Document No. 21, 4) (Tr. 17).  Plaintiff notes that the ALJ supports this finding, which contradicts Plaintiff's testimony, by stating "Ms. Lail was typically observed to have a normal gait."  (Document No. 21, p. 4) (citing Tr. 20).

Plaintiff argues that the ALJ's description of her gait may be correct for part of the record, but it is an inaccurate representation of her examinations beginning in May 2018.  (Document No. 21, pp. 4-5).  Plaintiff highlights dates in May, June, July, August, and September 2018 where she saw various medical care providers for different ailments.  Id. at 5.  During the May appointment,

7

Case 1:20-cv-00091-DCK   Document 25   Filed 09/14/21   Page 7 of 18

Plaintiff was found to have decreased strength in her right leg flexors and extensors. Id. (citing Tr. 1057). Plaintiff was found to have an antalgic gait at the June appointment. Id. (citing Tr. 1175). During the July and August appointments, Plaintiff was found to have mild right L5 radiculopathy, and the antalgic gait was noted again. Id. (citing Tr. 1431, 1203). Finally, in September, Plaintiff was observed with an antalgic gait and decreased range of motion in the lumbar spine. Id. (citing Tr. 1294).

Plaintiff uses this medical history to argue that the ALJ's description of her examination findings is "a mischaracterization of the apparent deterioration of her spinal condition that was occurring in the five months leading up to her hearing." (Document No. 21, p. 5) (citing Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 344-45 (4th Cir. 2012)). Plaintiff emphasizes that the ALJ had the duty to determine if there was any point during the relevant time period at which Plaintiff was disabled. (Document No. 21, p. 5). Plaintiff also argues that an ALJ cannot "cherrypick" evidence to support a finding of nondisability while ignoring evidence that would lead to the opposite conclusion. Id. (citing Arakas v. Comm. Soc. Sec. Admin., 2020 WL 7331494 (4th Cir. Dec. 14, 2020)).

Plaintiff asserts that the ALJ determined she could perform the full walking and standing requirements of light work, despite testimony and medical evidence indicating that her condition was worsening. Id. "In doing so, the ALJ failed to perform a function-by-function analysis forming a logical bridge between the medical facts and his conclusions regarding Ms. Lail's functional capacity." Id. at p. 5-6. (see Monroe v. Colvin, 826 F.3d 176, 189-190 (4th Cir. 2016)). Plaintiff then turns to Woods v. Berryhill, where the Fourth Circuit observed:

> The ALJ concluded that Woods could perform "medium work" and summarized evidence that he found credible, useful, and consistent. But the ALJ never explained how he concluded—*based on this evidence*—that Woods could perform the tasks required by

8

> "medium work," such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours. The ALJ therefore failed to build an "accurate and logical bridge" from the evidence he recounted to his conclusion about Woods's residual function capacity. On remand, the ALJ should remedy this error.

888 F.3d 686, 694 (4th Cir. 2018) (internal citations omitted).

Plaintiff argues that the ALJ here has failed in a similar way. (Document No. 21, p. 6). Plaintiff asserts that the ALJ "failed to explain how, after Ms. Lail's apparent deterioration in her lumbar condition beginning in May 2018, she was capable of performing the full range of light standing and walking as opposed to the 5-10 minutes at a time to which she testified." Id. (citing Tr. 45-47). Plaintiff seeks a remand for the ALJ to consider her condition throughout the relevant time period and to determine an RFC that is supportable based on all the evidence presented. (Document No. 21, p. 6).

In response to this compelling argument, Defendant contends that no gait RFC limitation is required. (Document No. 23, p. 9). In doing so, Defendant contends that "[i]n order to constitute an impairment for disability purposes, the alleged impairment must last, or be expected to last, for a continuous period of not less than 12 months." Id. (citing 42 U.S.C. § 423(d)(2)). Defendant further asserts that Plaintiff has not presented any evidence to satisfy this duration requirement, noting that the burden of proof rests on the claimant through the first four steps of the process. Id. (citing Monroe, 826 F.3d at 179 (4th Cir. 2016)). Looking over the duration of the disability period, Defendant notes that there is no window of twelve months in which claimant is consistently found to have an antalgic gait. (Document No. 23, p. 9). Defendant further explains that other, more temporary conditions, such as a sprained muscle, can cause an antalgic gait. Id. at 10. Defendant ultimately concludes that plaintiff "has failed to satisfy her burden of production and proof on this contention." Id.

9

In her response to Defendant's motion, Plaintiff argues that Defendant misstated the duration requirement. (Document No. 24, p. 2) (see also Document No. 23, pp. 9-10). "In order to be considered disabling, an *impairment* must last or be expected to last for a continuous twelve months." (Document No. 24, p. 2) see 20 C.F.R. § 404.1509. Plaintiff highlights that her gait instability is a symptom resulting from underlying impairments, specifically her DDD. (Document No. 24, p. 2). The gait instability is not an impairment, itself. Id. Symptoms may be intermittent, and Plaintiff notes that "ALJs are required to evaluate the waxing and waning nature of the underlying medical conditions." (Document No. 24, p. 2); see Arakas, 983 F.3d at 101 (4th Cir. 2020).

Plaintiff further highlights that "Defendant is estopped from arguing that Ms. Lail's lumbar DDD does not meet the duration requirement because the ALJ already admitted that it did in finding this condition to be a severe impairment at Step 2 of the SEP." Id. at 3; (Tr. 14): see also 20 C.F.R. § 404.1520(a)(4)(ii).

The undersigned notes the significant deference the Court must give the ALJ's decision under the applicable legal standard. Even if a court disagrees with the outcome, an ALJ's decision must be affirmed if it is supported by substantial evidence. Here, the undersigned finds that the ALJ relied on substantial evidence in his determination, despite Plaintiff's appreciable impairments. Though Plaintiff compellingly argues that an apparent deterioration of her condition meant the ALJ's determination that she "was typically observed to have a normal gait" was inconsistent with her condition in mid to late 2018, the undersigned finds that the ALJ relied on substantial evidence to support his decision regarding the relevant time period. (Document No. 21, p. 4) (see Tr. 20). The ALJ cites numerous medical records while discussing Plaintiff's symptoms:

10

> Overall, the claimant's allegations regarding the severity of her physical symptoms and limitations are not supported by the objective clinical findings of record. As noted above, imaging of her spine showed minimal findings, with little change over the last four years (Exhibit 3F; Exhibit 24F; Exhibit 26F). The EMG/NCS also showed only mild findings (Exhibit 31F). Examinations also produced few positive pertinent finds. Despite reporting 7-8/10 pain, the claimant was never in any apparent distress. Moreover, she typically retains a normal gait, strength, and sensation with no atrophy (Exhibit 11F; Exhibit 26F; Exhibit 29F; Exhibit 31F). Finally, I note that the claimant has been treated conservatively, with no surgery recommended (See Exhibit 33F).

(Tr. 19) (citing Tr. 383-84, 1008-15, 1018-1338, 1426-32, 606-11, 1458-61).

The undersigned observes that the numerous medical records cited in the ALJ decision indicate substantial evidence to support the conclusion that Plaintiff's gait did not require further RFC restrictions. Though Plaintiff presented significant evidence of her deteriorating ability to walk and stand, the undersigned is constrained by the applicable legal standard. It is not the role of this Court to re-weigh evidence presented to the ALJ. This first issue, while close, does not present a basis for remand as the undersigned understands the law.

**B.     Simple Routine Tasks**

Next, Plaintiff alleges that the "ALJ erred by failing to incorporate an admitted limitation to simple routine tasks in to the RFC." (Document No. 21, p. 6). Plaintiff notes that the ALJ "stated that he was accommodating her pain, fatigue, and medication side effects by limiting her to 'simple routine tasks,'" but "no such limitation appears in the RFC." Id. at 7 (quoting Tr. 21). Plaintiff argues that this constitutes "contradictory findings in the ALJ's RFC determination and the reasoning that supposedly undergirds the determination." (Document No. 21, p. 7). Plaintiff further argues that "[i]nconsistencies between an ALJ's residual functional capacity determination and other material findings by the ALJ require remand." Id. (citing Stathis v. Sullivan, 964 F.2d 850,851-52 (8th Cir. 1992)); see also Koepping v. Shalala, 1995 WL 478940 (S.D. Iowa May 11,

11

1995).  Plaintiff asserts that the ALJ fails to build the necessary "logical bridge" between his analysis, which states that Plaintiff should be limited to simple routine tasks, and his RFC determination, which does not include such limitations.  (Document No. 21, p. 7);  see Lopez ex. Rel. Lopez v. Barnhart, 336 F.3d 535, 540 (7th Cir. 2003);  see also Arakas, 2020 WL 7331494 at *11.

Plaintiff emphasizes that this is a harmful error "because she was denied at Step 5 using the ALJ's RFC, which did not include a limitation to simple routine tasks."  (Document No. 21, p. 7) (citing Tr. 24).  Plaintiff notes that the VE was not asked about a limitation to simple routine work during this process, which Plaintiff feels is problematic for two reasons: 1) this situation normally requires VE testimony; and 2) the ALJ cannot rely on testimony from the VE that does not address all of the claimant's limitations to deny the claim.  (Document No. 21, p. 7).

This assignment of error is based on a two-part argument from Plaintiff.  Id. at 6-9.  First, Plaintiff emphasizes that testimony from a VE is "generally needed to prove the existence of other work when the claimant's residual functional capacity to perform work at a given exertional level is affected by a non-exertional limitation."  Id. at 8 (citing Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)).  Plaintiff contends that the "limitation to simple routine tasks is an example of one such non-exertional limitation that requires VE testimony."  (Document No. 21, p. 8).

Next, Plaintiff argues that a vocational expert's testimony is only relevant or helpful if it is "based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all the plaintiff's impairments."  Id.  Accordingly, Plaintiff argues that an ALJ cannot rely on the answers to questions where the hypothetical does not fit the facts of the case.  Id.;  see Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979);  see also Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).  Plaintiff argues remand is appropriate

12

so "the ALJ may clarify what the RFC actually is, sufficiently articulate his reasoning undergirding the RFC, and solicit testimony from the VE concerning all of Ms. Lail's limitations." (Document No. 21, pp. 8-9).

In response, Defendant contends that the VE "identified jobs requiring Simple Routine Tasks, obviating any RFC 'error.'" (Document No. 23, p. 7). Defendant argues that the error Plaintiff attributes to the ALJ for omitting the Simple Routine Tasks limitation from the RFC is "harmless because the VE identified jobs, on which the ALJ relied to deny benefits, which involve SRTs." Id. Defendant highlights that the jobs listed by the VE – marker in retail and café attendant – are unskilled with a specific vocational preparation level of 2. Id. (citing Tr. 55-58). Defendant cites the Fourth Circuit, which held "there is no apparent conflict between the DOT's definition of reasoning level two and a limitation to 'simple, routine, repetitive' tasks." (Document No. 23, p. 8) (citing Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019). Defendant argues this indicates that, without further investigation, the ALJ may rely on VE testimony "that an individual limited to simple, routine, repetitive tasks can perform work with GED reasoning and SVP levels of two." (Document No. 23, p. 8).

Defendant emphasizes the Fourth Circuit holding that "absent a showing of prejudice, 'any error on the part of the ALJ [is] harmless' and a remand is not appropriate." Id. (quoting Camp v. Massanari, 22 Fed App'x 311 (4th Cir. 2001)). In this regard, Defendant contends that Plaintiff bears the burden of showing that there was not only an error, but an error that was harmful. (Document No. 23, p. 8) (citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009); Smith v. Colvin, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result")).

13

In response, Plaintiff pushes back against Defendant's argument that the jobs cited by the VE are consistent with the additional limitation, making the error harmless. Plaintiff describes the argument as "mere conjecture and not based upon any testimony by the VE or evidence proffered in Ms. Lail's case." (Document No. 24, p. 1) (citing Document No. 23, p. 7). Further, Plaintiff describes Defendant's reliance on Lawrence as "misplaced." (Document No. 24, p. 1). Plaintiff notes that in Lawrence, "the Court did indeed hold that there is no *apparent* conflict between a limitation in RFC to SRTs and the VE's testimony that a claimant can perform GED reasoning level 2 jobs." Id. (citing Lawrence, 941 F.3d at 142-43 (4th Cir. 2019)). That, according to Plaintiff, is why the ALJ in Lawrence was permitted to rely upon the testimony of the VE. (Document No. 24, p. 1). Plaintiff distinguishes this case from Lawrence, however, arguing that "the ALJ was still relying on *something*, in that case the VE testimony, in making his Step 5 determination," while there was no VE testimony regarding limitation to SRTs in the present case. Id. (citing Lawrence 941 F.3d at 141). Plaintiff further emphasizes that the ALJ's determination that Plaintiff can perform work with the non-exertional limitation to SRTs is not supported by anything approaching substantial evidence. (Document No. 24, p. 2).

The undersigned finds Defendant's argument more persuasive. As Defendant suggests, the undersigned finds no prejudicial effect stemming from the absence of "simple routine tasks" in the RFC determination. The undersigned does not find that the ALJ's omission of the words "simple routine tasks" from the RFC creates an issue that could potentially result in a different outcome on remand. (Document No. 23, p. 8); see Camp v. Massanari, 22 Fed. App'x 311 (4th Cir 2001) (citing Newton v. Apfel 209 F.3d 448, 458 (5th Cir. 2000) (requiring a showing that the error's correction might lead to a different conclusion). The burden of showing that an error is harmful

14

rests on Plaintiff here, and Plaintiff has not met that burden. Id.; see Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Plaintiff does attempt to show harm, arguing that the "error is harmful to Ms. Lail because she was denied at Step 5 using the ALJ's RFC, which did not include a limitation to simple routine tasks." (Document No. 21, p. 7) (Tr. 24). However, simply citing the stage at which Plaintiff's claim was denied does little to actually demonstrate harm. Plaintiff's motion therefore lacks sufficient support for this Court to conclude that the ALJ's decision requires remand.

**C.   Manipulative Limitations**

Finally, Plaintiff argues that the ALJ erred "by failing to include manipulative limitations from Plaintiff's severe impairment of carpal tunnel syndrome in the RFC." (Document No. 21, p. 9). Plaintiff notes that the ALJ did determine Plaintiff's carpal tunnel syndrome to be a severe impairment (Tr. 14), but Plaintiff takes issue because "the ALJ included no manipulative restrictions on handling, fingering, or reaching in his RFC determination." (Document No. 21, p. 9); see (Tr. 17). Plaintiff notes that "Ms. Lail testified that fingers on her hands will go numb." (Document No. 21, p. 9); see (Tr. 44). Plaintiff points to medical evidence for further support:

> The medical evidence also establishes that Ms. Lail has difficulties with her hands as her July 31, 2018 EMG demonstrated mild right median neuropathy at the wrist in addition to mild multilevel chronic cervical radiculopathies. In fact, Ms. Lail complained of numbness and tingling into the fingers in her right hand as early as April 26, 2013. Again, on November 16, 2016, Ms. Lail complained of tingling in both hands and numbness in all fingers but her thumbs.

(Document No. 21. p. 9).

Plaintiff emphasizes that despite the ALJ's characterization of Plaintiff's carpal tunnel syndrome as a severe impairment, he did not include manipulative restrictions in his RFC determination. Id.; see (Tr. 17). Plaintiff further states that "[i]n finding that Ms. Lail's carpal

15

tunnel syndrome was a severe impairment, the ALJ admitted that Ms. Lail would have more than minimal limitations from the conditions," but no such limitations appear in the RFC. (Document No. 21, p. 9); see Soc. Sec. Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments.")

In response, Defendant contends the Plaintiff's carpal tunnel syndrome did not require further RFC restrictions. (Document No. 24, p. 10). Defendant points to the ALJ's discussion of Plaintiff's carpal tunnel syndrome, noting that the ALJ observed no clinical findings that the Plaintiff is unable to use her upper extremities effectively. Id. (citing Tr. 15-16). Defendant cites medical evidence to support the ALJ's conclusion, including a visit to a doctor on March 20, 2018 during which Plaintiff "denied having any joint pain or numbness/tingling." (Document No. 23, p. 10) (citing Tr. 993-994).

Defendant also argues that "the ALJ need not adopt a medical opinion in its entirety because the ALJ determines the appropriate RFC based on the record as a whole." (Document No. 23, p. 11) (citing Wedwick v. Colvin, 2015 WL 4744398, at *20 (E.D.Va. July 7, 2015)). Further, Defendant notes that it is the "claimant's burden to establish how any medically determinable impairments affect functioning" with respect to the RFC. (Document No. 23, p. 11) (citing 20 C.F.R. §§ 404.1512(c) & 416.912(c)).

The undersigned again finds that the ALJ relied on substantial evidence in reaching his conclusion. Defendant is particularly persuasive in highlighting that Plaintiff "denied having any joint pain or numbness/tingling" during a medical appointment in 2018. (Document No. 23, p. 10) (citing Tr. 993-4). The undersigned notes that support for the ALJ's decision need only be based on "more than a scintilla" of evidence to allow "a reasonable mind" to accept it as adequate. Perales, 402 U.S. at 401. While Plaintiff correctly notes that the ALJ designated Plaintiff's carpal

tunnel as a severe impairment, the ALJ cited medical evidence for his conclusion that no additional limitations were needed in the RFC. (Document No. 21, p. 9) (Tr. 15-16).

Defendant cited Plummer v. Astrue, a case from this district, which said:

> The claimant's RFC represents the extent of her possible work activity despite her impairment. The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC. However, the Commissioner alone is responsible for determining the claimant's RFC based on all of the relevant evidence.

2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011).

The undersigned observes that Plaintiff has not met this burden, and the medical evidence presented by Defendant undercuts Plaintiff's attempts to do so. Plaintiff has failed to establish that the ALJ did not properly consider her carpal tunnel syndrome in forming the RFC. Accordingly, the undersigned will also decline to remand the case on that basis.

## IV. CONCLUSION

As stated at the outset, this is an especially close case, particularly as to Plaintiff's first issue. Applying the applicable legal standard dutifully, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will direct that the Commissioner's decision be affirmed.

As also previously observed, the Court expresses no opinion, but suggests that a renewed application on behalf of Plaintiff – alleging a new disability onset date – might meet with a different result.

**IT IS, THEREFORE, ORDERED** that: Plaintiff's "Motion For Summary Judgment" (Document No. 20) is **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 22) is **GRANTED**; and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: September 13, 2021

David C. Keesler
United States Magistrate Judge